UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff-Appellee, ) | |
| ) | |
| v. ) | Nos.: 3:18-CR-193-TAV-DCP |
| ) | 3:18-CR-194-TAV-DCP |
| JOHN WILLIAM HANSON III, ) | |
| ) | |
| Defendant-Appellant. ) | |

## **MEMORANDUM AND ORDER**

Before the Court is Defendant Hanson's Motion for Release from Custody Pending Appeal. [Doc. 10]. The United States (the "Government") has responded in opposition. [Doc. 12]. Assistant United States Attorney LaToyia T. Carpenter appeared on behalf of the Government. Attorney Mark E. Brown represented Defendant Hanson ("Defendant"). The matter is now ripe for review.

### I.    Background

On September 25, 2018, Defendant was convicted by a jury of forcibly resisting a federal officer in the performance of the officer's official duties in violation of 18 U.S.C. § 111(a)(1) (Class A misdemeanor). On that same date, United States Magistrate Judge H. Bruce Guyton found Defendant Hanson guilty of six petty offenses (Class B misdemeanors).[1] Defendant was

---

[1] The violation of 18 U.S.C. § 111(a)(1) (Class A misdemeanor) was the subject of case no. 3:18-CR-61. The six petty offenses (Class B misdemeanors) were the subject of case no. 3:18-PO-53. The cases were consolidated for purposes of trial. In the violation notices, Defendant was charged with violating 36 C.F.R. § 2.15(a)(1) (prohibiting the possession of a pet in an area closed to pets), 36 C.F.R. § 2.15(a)(2) (prohibiting the failure to restrain a pet on a leash or in a container at all times), 36 C.F.R. § 2.13(a)(1) (prohibiting lighting a fire, except in designated areas), 36 C.F.R. § 2.32(a)(2) (prohibiting violating the lawful order of a government employee authorized

sentenced to 10 months' imprisonment[2] and remanded into custody at the sentencing hearing on November 15, 2018. [Trial Doc. 67]. Defendant filed a timely notice of appeal [Trial Doc. 69] and now seeks release on bond pending resolution of the appeal. [Doc. 10].

## II.     Standard

Pursuant to the Bail Reform Act, 18 U.S.C. § 3143(b), a court shall order that a person who has been found guilty of an offense and sentenced to term of imprisonment be detained unless certain conditions are met. Following a conviction, the act creates a presumption against release pending appeal. *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002); *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). The defendant carries the burden of overcoming this presumption by showing: (1) by clear and convincing evidence that the "person is not likely to flee or pose a danger to…any other person or the community" and (2) that the appeal is not for the purpose of delay and "raises a substantial question of law or fact likely to result in" a reversal, a new trial, a sentence that does not include imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b). An "appeal raises a substantial question when the appeal presents a 'close question or one that could go either way' and …the question 'is so integral to the merits

---

to perform law enforcement actions), 36 C.F.R. § 2.32(a)(3) (prohibiting the knowing provision of false information in order to mislead a government employee in the performance of official duties), and 36 C.F.R. § 2.35(b)(2) (prohibiting the possession of a controlled substance without a valid prescription or order). These charged regulations are from part 2 of Title 36, relating to resource protection, public use, and recreation in the National Park Service. *See* 36 C.F.R. § 1.3 (providing that penalties for violations of part 2 are governed by 18 U.S.C. § 1865). Unless otherwise noted, citations to the trial proceedings will be by docket number in case no. 3:18-CR-61 as [Trial Doc. #].

[2] The Defendant received a total sentence of fourteen months consisting of ten months on his conviction for the misdemeanor offense of forcibly resisting a federal officer and four months on the six petty offenses. The sentences were run concurrently for a total effective sentence of ten months.

of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor.'" *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (quoting *United States v. Powell,* 761 F.2d 1227, 1233–34 (8th Cir. 1985)).

## III. Analysis

### A. Risk of Flight and Dangerousness

Turning to the factors to be considered, Defendant first argues that he poses no danger to the safety of the community or risk of flight. In support of his argument, Defendant asserts that "[h]e didn't hurt anyone in this case, and only fled from law enforcement after being punched in the head by Park Rangers." [Doc. 10 at 3]. Further, Defendant states that he has "been at every court appearance, including an appearance the day after he was convicted. He also appeared for his sentencing." [*Id*. at 3]. The Government responds that Defendant's underlying actions belie Defendant's arguments. As to risk of flight, the Government points to the nature of the crime of which Defendant has been convicted—forcibly resisting a federal officer in the performance of the officer's official duties—as well as Defendant's conduct incident to his arrest as factors weighing against release. Specifically, the Government details that Defendant broke free and ran from the Great Smoky Mountains National Park Rangers as they were attempting to arrest him [Trial Doc. 70 at 58–60]; Defendant surreptitiously obtained a key to the handcuffs allowing him to repeatedly remove the handcuffs at the hospital following his arrest [Trial Doc. 71 at 165–67]; and Defendant feigned difficulty with walking when he learned that he was being discharged from the hospital and transported to jail. [*Id.* at 178–79]. Further, Defendant gave the officers false information concerning his identity [*Id.* at 57–58]. *See United States v. Valerio*, No. 07-10421-FDS, 2009 WL 2058851, at *2 (unpublished) (D. Mass. July 10, 2009) (finding use of false identity is relevant factor in the risk-of-flight analysis).

The Court agrees that these actions demonstrate Defendant's lack of respect for authority and purpose to evade capture and the attendant consequences. Moreover, the Court has independently examined the Presentence Report [SEALED Trial Doc. 65], and found a lack of clear and convincing evidence that would direct a determination of release. The Presentence Report reflects that Defendant was previously charged with Failure to Comply-Fleeing/Eluding and Disorderly Conduct and that after his arrest for that offense, he filed a complaint against the two arresting officers claiming they assaulted him. Following an investigation, Defendant was subsequently charged and found guilty of Making False Allegations of Peace Officer. [*Id.* at 11–14].[3] The Presentence Report further reflects multiple incidents of Defendant having failed to appear in court, with one such incident being a failure to appear for imposition of sentence after his appeal was denied. [*Id.* at 10–11]. Taken as a whole, these circumstances call into question Defendant's credibility and compels a finding that Defendant has failed to carry his burden of demonstrating by clear and convincing evidence that he is not likely to flee.

Similarly, Defendant has failed to establish by clear and convincing evidence that he does not pose a danger to the community or others. While Defendant argues that he merely fled from officers and did not physically hurt anyone in this case, the concept of danger requires the Court to "look to more than whether or not defendant *himself* has been guilty of physical violence." *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988) (emphasis in original). The Court must also look to the safety of the community as a whole. *Id.* In this regard, the Government points to the risk to the public's safety that was created during Defendant's arrest. The testimony at trial established that Defendant fled from the Park Rangers as they tried to effectuate his arrest, which

---

[3] However, the Presentence Report also reflects that Defendant's charges for Failure to Comply-Fleeing/Eluding, as well as Disorderly Conduct, were eventually dismissed. [*Id.* at 16].

prompted park visitors to assist in efforts to confine Defendant during the chase and to pin Defendant's legs when he was finally captured. [Trial Doc. 70 at 67]. During the incident, the Park Rangers had to deploy a taser multiple times before effectively incapacitating Defendant so that he could be restrained. [*Id*. at 66–67]. The objective facts indicate that Defendant posed a risk to the safety of the officers and members of the public.

Not only is Defendant's propensity for dangerousness evidenced by Defendant's actions during his arrest, but also by his conduct during the period of time he was released on bond pending sentencing. Specifically, the Presentence Report reflects that while Defendant was on bond[4], he repeatedly sought and was refused a prescription for Marinol.[5] [SEALED Trial Doc. 65 at 18–19]. Notably, Defendant visited emergency rooms in the same health network for four straight days, from September 27 to September 30, 2018,—beginning with the day his conditions of release were imposed following his conviction—with requests for Marinol. [*Id.*]. The report states that on one occasion, "the defendant 'cussed out' that doctor for the refusal to provide him with the medication," and that one physician described Defendant as having "a drug-seeking behavior." [*Id.*]. Based on a report of Defendant's behavior after being refused a Marinol prescription, one emergency room physician had security stationed outside of the patient room during her discussion with Defendant. [*Id.* at 19].

---

[4] An Order Setting Conditions of Release was entered on June 26, 2018, following Defendant's initial appearance [Trial Doc. 7], and a subsequent Order Setting Conditions of Release was entered on September 26, 2018, following Defendant's jury conviction [Trial Doc. 49], with Supplement to Order entered on September 28, 2018 [Trial Doc. 50].

[5] Marinol is a prescription medication where the active ingredient is a synthetic derivative of marijuana. *See Rogers v. Bazzell*, No. 3:11-cv-1172, 2012 WL 110811, at *1 n.1 (M.D. Tenn. Apr. 2, 2012). Marinol "is listed as a Schedule III controlled substance: specifically, 'Dronabinol (synthetic) in sesame oil and encapsulated in a soft gelatin capsule in a U.S. Food and Drug Administration approved product.'" *John Doe, Inc. v. Gonzalez*, No. 06-966, 2006 WL 1805685, at *9 (D.D.C. June 29, 2006) (citing 21 C.F.R. § 1308.13(g)(1)).

Defendant's penchant for Marinol causes a heightened concern of risk of danger to the safety of the community and demonstrates Defendant's propensity to continue to engage in potentially dangerous behavior, coupled with a confrontational attitude and militant lack of responsibility, even when on bond. Accordingly, Defendant has failed to show by clear and convincing evidence that he is not a danger to the community.[6]

**B. Substantial Question of Law or Fact**

Even if Defendant had established that he is not risk of flight or danger, he would still not be entitled to bond pending appeal as he has failed to articulate a substantial question of law or fact sufficient to overcome the presumption against release pending appeal. Defendant argues that his appeal raises a substantial question of law, specifically a violation of his rights under the Speedy Trial Act [Doc. 10 at 3]. Defendant asserts that while he was arrested on February 3, 2018, he was not charged by Information for the Class A misdemeanor until May 2018. Defendant maintains that the officers intended to charge him with the Class A misdemeanor offense on the day of his arrest, and because the Information was not brought within thirty (30) days of the arrest, the delay violated his rights under the Speedy Trial Act. [*Id.*]. The Government contends that the Speedy Trial Act does not apply to petty offenses charged in this case.

As explained in the Memorandum and Order entered on September 5, 2018 [Trial Doc. 24], this issue appears to be governed by controlling precedent within the Sixth Circuit such that the Court is unable to see how this appellate issue could constitute a substantial question likely to

---

[6] At the hearing, Defendant proffered a need for medical treatment as a basis for his request for release. [*See also* Doc. 10 at 3]. However, health problems alone do not necessarily mean that a defendant does not pose a risk of flight or danger to others. *See United States v. Dimora*, No. 1:10-CR-387, 2012 WL 1409396, at *4 (N.D. Ohio April 23, 2012) (rejecting the defendant's contention that his poor health makes his risk of flight a near impossibility) (citing *United States v. Nicolo*, 706 F.Supp.2d 330, 332 (W.D.N.Y. 2010). If necessary, any specialized medical treatment could be accomplished through an appropriate request for medical furlough.

result in reversal.  In *United States v. Moncier*, 492 F. App'x 507 (6th Cir. 2012), the Sixth Circuit Court of Appeals held that "Class B misdemeanors are excluded from the Speedy Trial Act." *Id.* at 510.  Moreover, Defendant's arrest was followed by the issuance of violation notices, and not a criminal complaint.  With respect to the "gilding exception" stemming from non-precedential cases argued in Defendant's amended motion to dismiss [Trial Doc. 12], 18 U.S.C. § 3161(b) does not apply in the absence of a criminal complaint.  Additionally, the delay at issue did not violate Defendant's Sixth Amendment right to a speedy trial, as the Information was brought within three months of his arrest—well within the applicable five-year statute of limitations.  See 18 U.S.C. § 3282; United States v. Marion, 404 U.S. 307, 322–23 (1971) (stating that the statute of limitations is the primary standard to assess whether a pretrial delay violates the Sixth Amendment right to a speedy trial).  Therefore, the Court concludes that Defendant has not demonstrated that this issue raises a substantial question sufficient to overcome the presumption against release pending appeal.

For the reasons discussed above, the Court finds that the defendant has not satisfied the requirements of 18 U.S.C. § 3143(b) and accordingly, Defendant Hanson's Motion for Release Pending Appeal [Doc. 10] is hereby **DENIED**.

IT IS SO ORDERED.

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge